People v Williams (2023 NY Slip Op 04260)

People v Williams

2023 NY Slip Op 04260

Decided on August 10, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: August 10, 2023

Before: Kapnick, J.P., Kern, Friedman, Gesmer, JJ. 

Ind No. 295/19 4524/18 Appeal No. 96-96A Case No. 2020-01058 

[*1]The People of the State of New York, Respondent,
v
Jason Williams, Defendant-Appellant. 

Mark W. Zeno, Center for Appellate Litigation, New York (Elizabeth Vasily of counsel), for appellant.
Alvin L. Bragg, Jr., District Attorney, New York (Robert Butlien of counsel), for respondent.

Judgment, Supreme Court, New York County (Ellen N. Biben, J.), rendered December 5, 2019, as amended August 25, 2022, convicting defendant, upon his plea of guilty, of attempted murder in the second degree and conspiracy in the second degree, and sentencing him to an aggregate term of five years, and judgment, same court and Justice, rendered December 5, 2019, convicting defendant, upon his plea of guilty, of burglary in the first degree, and sentencing him to a consecutive term of six years, modified, as a matter of discretion in the interest of justice, to the extent of directing that all sentences run concurrently and vacating the mandatory surcharges and fees imposed at sentencing, and otherwise affirmed.
The court providently exercised its discretion in denying defendant youthful offender treatment, which is not warranted under the circumstances of the case (see People v Anthony C., 25 NY3d 937, 938 [2015]). However, based upon the information submitted by defendant as to his good reputation in his school and community, and his demonstrated significant efforts at rehabilitation, we find the sentence excessive to the extent indicated. In addition, based on our own interest of justice powers, we vacate the surcharge and fees imposed at sentencing (see People v Chirinos, 190 AD3d 434 [1st Dept 2021]). We note that the People consent.
All concur except Friedman, J. who dissents in part
in a memorandum as follows:

FRIEDMAN, J. (dissenting in part)
 

Defendant, having pleaded guilty, stands convicted of two separate violent and gang-related class B felonies, committed 17 months apart, each of which resulted in serious physical injury to a different victim. The first offense admitted by defendant (prosecuted under indictment number 295/19) was his shooting, on April 11, 2017, of a person pointed out to him by a codefendant, an act that was, by defendant's admission, one episode in a long-running gang-related conspiracy. The victim, who was in a crowd of people, was struck in the leg by the bullet from defendant's gun; by a stroke of good fortune, no one was killed.[FN1] The second offense admitted by defendant (prosecuted under indictment number 4524/18) was committed on September 11, 2018, while he was in pretrial custody in connection with the April 2017 shooting. In the September 2018 offense, defendant and several codefendants forced their way into the cell of another inmate, whom they believed to be a member of a rival gang, and brutally attacked him by slashing his face and stomping on his head. The victim in the jailhouse incident suffered a deep laceration to the left side of his face that required eight stitches, as well as a bruise in the shape of a shoeprint on his forehead.
Based on the April 2017 shooting (indictment number 295/19), defendant pleaded guilty to one count of attempted murder in the second degree and one count of conspiracy in the second degree, for which he was sentenced — pursuant to his plea bargain with the People [*2]— to a determinate term of five years on the attempted murder count and an indeterminate term of two to six years on the conspiracy count. Based on the September 2018 jailhouse assault (indictment number 4524/18), defendant pleaded guilty to one count of burglary in the first degree, for which he was sentenced — again, pursuant to his plea bargain with the People — to a determinate term of six years, to run consecutively to the sentence imposed under indictment number 295/19. Accordingly, defendant agreed to, and received, a minimum aggregate sentence of 11 years for the two separate violent felonies, each involving a physically injurious (and, at least in the first case, potentially deadly) attack on another person, that he admittedly had committed over a period of a year and a half.[FN2]
On this appeal, defendant asks us to reduce his sentence to concurrent terms, based on the following factors: his relative youth at the time of his offenses (he was 2½ months short of his 18th birthday when he committed the attempted murder in April 2017); his lack of prior convictions; his generally favorable reputation in his school and community; his strong family background; his generally positive school and employment record; the stresses to which he was subject when he committed the crimes; and his efforts at rehabilitation since the commission of the offenses at issue. I am not persuaded.
To be sure, this Court is authorized, "as a matter of discretion in the interest of justice," to reduce a lawful sentence that we determine to be "unduly harsh or severe" (CPL 470.15[6][b]). However, even after considering the various mitigating and extenuating factors he raises, I do not believe that an 11-year aggregate minimum sentence is an unduly harsh or severe punishment for the two separate and distinct violent crimes to which defendant has admitted. To reiterate, these crimes, which were remote in time from each other, each resulted in a substantial physical injury to a different victim. The first offense involved, as defendant admits, his discharging a gun into a "crowd," thereby endangering several people while inflicting a bullet wound on one person's leg.[FN3] The second, unrelated offense, committed 17 months later while defendant was in pretrial detention for the first crime, was defendant's participation in a vicious concerted attack on a different victim, who was left with a deep facial laceration that required eight stitches and a shoeprint on his forehead. The jailhouse assault was terminated only when it was interrupted by the guards. In view of the severity of these offenses, I respectfully dissent from the modification of the judgment to run all of the sentences concurrently.[FN4]
The sentencing court, which was fully cognizant of all of the circumstances defendant raises in extenuation of his guilt, properly imposed consecutive sentences for defendant's two separate offenses, pursuant to the terms of his plea agreement. To begin, while defendant had not yet [*3]reached his 18th birthday at the time of his first offense, he was then only 2½ months away from adulthood, and he was 19 at the time of the second offense. The emphasis placed by defense counsel on research showing that the human brain is not fully developed until about the age of 25 is, in my view, misplaced. One can accept the commonsense observation that persons in their late teens do not have the impulse control attained somewhat later in life without excusing either an attempt to shoot to death someone in the middle of a crowd or taking part in what was essentially a gang assault, involving the use of a sharp weapon, upon a lone victim. Needless to say, most persons in their late teens, however impulsive, manage to avoid engaging in misconduct this extreme, vicious and life-threatening.
By the same token, the stressful circumstances in defendant's life in the period leading up to the shooting do not, in my view, extenuate his guilt. Many young people face the kind of problems of which defendant complains — the passing of a beloved grandparent, an inattentive father, his parents' breakup, the need to work while still in high school, the challenges presented by a disabled younger sibling, and bullying.[FN5] Taking into account these hardships and defendant's youth, the People agreed to a near-minimum sentence of six years for each of the two separate offenses (the minimum term for each of the top counts is five years), and the court ultimately reduced the sentence on one of those counts to the minimum term of five years. All this was done with the understanding that the terms for the two separate offenses would run consecutively, as provided by the terms of defendant's negotiated plea.[FN6] Modifying the judgment to run the sentences for the two crimes concurrently, thereby reducing the aggregate sentence from 11 to 6 years, results in an aggregate sentence just one year above the statutory minimum for either of the underlying convictions, standing alone. I decline to join in limiting defendant's punishment for one of his two violent class B felonies to a one-year term appropriate for a misdemeanor. Given the seriousness of his crimes and his demonstrated propensity to violence (whether on his own initiative or at the urging of others), defendant has already received as much leniency as he deserves and as is consistent with public safety.
It should also be borne in mind that defendant's sentence was the result of a fairly negotiated plea agreement. The record clearly demonstrates that defendant comprehended and assented to a prison term of six years for the attempted murder charge to run consecutively to a prison term of six years for the burglary charge. Notably, the six-year sentence defendant received for the burglary charge was significantly less than the 10-year sentence recommended by the People. Furthermore, as previously noted, defendant initially received the negotiated sentence of 12 years; however, after carefully considering all the mitigating [*4]factors defendant presented, the sentencing court made a discretionary reduction at resentencing, reducing the six-year prison term on the attempted murder conviction to five years. As the mitigating factors adduced by defendant were already the basis for a reduction, they do not warrant an additional reduction on appeal (see People v Suwei Chuang, 96 AD3d 590, 596 [1st Dept 2012] ["the determination of . . . punishment made by the (t)rial (j)udge should be afforded high respect" (internal quotation marks omitted)], lv denied 19 NY3d 1108 [2012], cert denied 568 US 1162 [2013]; see also People v Sanchez, 157 AD3d 107, 120 [1st Dept 2017] [upholding sentence where the sentencing court already considered mitigating factors], affd 32 NY2d 1021 [2018]; People v Blow, 172 AD2D 366, 367 [1st Dept 1991] [same], lv denied 78 NY2d 962 [1991]).
On this appeal, defendant relies on letters of support from family members, teachers, employers and friends, which paint a glowing picture of him that is difficult to square with the reality of his admitted violent criminal conduct. The letters suggest that, for all the difficulties he faced, defendant enjoyed significant support from the people around him. Indeed, on appeal, defendant stresses his family and communal support as indicative of his potential for rehabilitation. Nonetheless, in spite of having these relative advantages, defendant lapsed into potentially lethal criminality not once but twice, suggesting greater rather than lesser culpability. The letters' description of defendant as "calm and level headed" and a "role model" and "leader" contradict defendant's claim that the shooting was a "mistake . . . spurred by [] poor judgment and impulse control," done under "peer pressure" while trying to "'fit in' and 'look cool' with the other boys." Furthermore, after these letters, insisting that defendant was "remorseful" and "deserving of a second chance," were submitted to the court after his initial offense in 2017, defendant perpetrated his second violent offense the following year.
Finally, defendant points to his successes while incarcerated after his participation in the jailhouse attack, including his completion of numerous certificates and classes, his impact on fellow inmates, and lack of incidents for 19 months prior to his resentencing in August 2022. However, while commendable, the progress defendant demonstrates occurred "while he was in a controlled environment and is not necessarily indicative of his future conduct while at liberty" (People v James D., 200 AD3d 618, 619 [1st Dept 2021]). In any event, as previously discussed, upon resentencing, the court already afforded defendant leniency based on his improved record since his September 2018 offense by reducing his aggregate sentence by one year. His recent good behavior in custody, however praiseworthy, does not, in my view, justify nearly eliminating the penalty for one of two separate violent class B felonies, which is the effect of running [*5]all of the sentences concurrently.
For all of the foregoing reasons, I would affirm the judgment imposing consecutive sentences for defendant's two separate crimes. Accordingly, while I
otherwise concur in the majority's disposition of the appeal, I respectfully dissent to the extent the majority modifies the judgment to run all of defendant's sentences concurrently. THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT. 
ENTERED: August 10, 2023

Footnotes

Footnote 1: Defendant was originally indicted in 2017 based on the 2017 incident. A superseding indictment covering that incident was returned in 2019.

Footnote 2: Indeed, the 11-year minimum aggregate sentence that defendant ultimately received represented a substantial measure of leniency beyond both the People's original offer and the sentence originally imposed. The People originally offered defendant 10 years on the burglary count (indictment number 4524/18) to run consecutively to six years on the attempted murder count (indictment number 295/19). At the plea hearing, the court, with the People's acquiescence, offered the defendant six years on each indictment, for an aggregate determinate sentence of 12 years, and that was the sentence initially imposed in November 2019. When defendant was resentenced in August 2022 for the purpose of making an express determination on youthful offender treatment, the court, based on defendant's favorable prison record since his original sentencing, reduced his sentence on the attempted murder count under indictment number 295/19 from a determinate term of six years to a determinate term of five years; the indeterminate term of two to six years on the conspiracy count under the same indictment was not changed. Accordingly, the resentencing resulted in a minimum aggregate sentence of 11 years for both indictments.

Footnote 3: Specifically, according to the Probation Department's presentence report, defendant, in describing his 2017 offense, "stated he fired a gun into a crowd and someone was hit in the leg." The record reflects that, in an apparent attempt to downplay his culpability, defendant told his counsel at one point that he was not aiming at any particular person and that he "merely intended to scare the other boys." At the plea hearing, however, defendant admitted under oath that he "aimed [his gun] at [the] individual" his codefendant had pointed out to him and that he then "fired [the gun] striking the individual in the leg." He also allocuted to having, "with the intent to cause the death of another person, attempted to cause the death of another person."

Footnote 4: I otherwise concur in the majority's disposition of the appeal, specifically, the affirmance of the denial of defendant's request for youthful offender treatment and the vacatur of the imposition of surcharges and fees.

Footnote 5: The record does not support defense counsel's effort to portray the shooting as an act that was "provoked by the complainant's bullying of [defendant] and [his disabled brother] over a prolonged period of time." To the contrary, defendant told the Probation Department that "[h]e really did not know" the person whom he shot. At his plea hearing, defendant admitted that, as charged in the indictment, the shooting was part of a long-running gang feud. It also appears from the record that the shooting was an attempt by defendant, urged on by his codefendants, to get even with a young man who was part of a group with whom defendant had gotten into a fight earlier that day. Notably, an affirmation of his counsel in the record states that defendant obtained the gun he used in the shooting on his own initiative; it was not given to him by one of his codefendants ("[d]uring this fight [earlier on the day of the shooting], a firearm was dropped and [defendant] picked it up from the ground").

Footnote 6: Had defendant gone to trial and been convicted of the top counts of attempted second-degree murder and first-degree burglary, both class B felonies, he would have faced a prison term of as much as 25 years for each conviction (Penal Law § 70.02[3][a]). Defendant's five-year sentence for the attempted murder conviction is in line with sentences that we have upheld for similar crimes (see People v Peralta, 271 AD2d 359 [1st Dept 2000] [upholding the defendant's 6 to 18-year prison term for attempted second-degree murder], lv denied 95 NY2d 837 [2000]; People v Boone, 160 AD2d 345 [1st Dept 1990] [same], lv denied 76 NY2d 785 [1990]). Defendant's six-year sentence for his participation in the jailhouse attack is also on the lower end of the sentences received by his codefendants, which ranged between 5 and 21 years.